**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:20-CV-00016-HBB**

**DONNA FRAMES**                                                                                 **PLAINTIFF**

**VS.**

**ANDREW SAUL, COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**                                          **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Donna Frames ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).   Both Plaintiff (DN 12) and Defendant (DN 15) have filed a Fact and Law Summary.   For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10).   By Order entered May 6, 2020 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income Benefits on April 21, 2015 (Tr. 15, 160-65).   Plaintiff alleges to have become disabled on October 30, 2014, as a result of high blood pressure, left knee, heart problems, breathing issues, type II diabetes, migraines, and arthritis (Tr. 15, 69-70, 77-78).   These claims were initially denied on June 3, 2015, and the denial of the claims were affirmed upon reconsideration on January 26, 2016 [1] (Tr. 15, 75, 90). Administrative Law Judge Maribeth McMahon ("ALJ") conducted a video hearing from Paducah, Kentucky on November 9, 2017 (Tr. 15, 33-35).   Virtually present at the hearing from Owensboro, Kentucky was Plaintiff and his attorney Sara Martin Diaz (Id.).   During the hearing, Kenneth Boaz testified as a vocational expert (Tr. 15, 33-35, 63-66).

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 21, 2015, the application date (Tr. 17).   At the second step, the ALJ determined Plaintiff has the following severe impairments: osteoarthritis, type II diabetes mellitus, hypertension, headaches, and obesity (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in Appendix 1 (Tr. 18).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at medium work, as defined in 20 C.F.R. § 416.967(c), except for the following limitations: she can lift, carry, push, and/or pull 30 pounds occasionally and 25 pounds frequently; she can frequently handle, finger, and feel bilaterally with the upper

---

1   The ALJ's report specifies the reconsideration date as January 27, 2016 (Tr. 15).   Accompanying the signature of Disability Adjudicator/Examiner Terry Walters is the date of the reconsideration, which was January 26, 2016 (Tr. 90).   This appears to be a simple typographical error.

extremities; she can sit, stand, and walk for up to 6 hours each, with normal breaks, during an 8-hour workday; she can frequently climb ramps and stairs; she should never climb ladders, ropes, or scaffolds; she can frequently balance, stoop, kneel, crouch, and crawl; and she should never be exposed to vibration, unprotected heights, or dangerous machinery (Id.).   Continuing from the RFC determination, the ALJ found Plaintiff is capable of performing past relevant work as a bookkeeper, as the work does not require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 26).   Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, since April 21, 2015, the date the application was filed (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 158-59).   The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

<u>CONCLUSIONS OF LAW</u>

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); <u>Cotton v. Sullivan</u>, 2 F.3d 692, 695 (6th Cir. 1993); <u>Wyatt v. Sec'y of Health & Human Servs.</u>, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.   <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 213 (6th Cir. 1986).   "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   <u>Cotton</u>, 2 F.3d at 695 (quoting <u>Casey v. Sec'y of Health & Human Servs.</u>, 987 F.2d 1230, 1233 (6th Cir. 1993)).   In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in

3

evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964

F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the

ALJ's decision (Tr. 1-3).   At that point, the ALJ's decision became the final decision of the

Commissioner.   20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality

of the Commissioner's decision).   Thus, the Court will be reviewing the decision of the ALJ, not

the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered

the decision.   42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d

146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The   Social   Security   Act   authorizes   payment   of   Disability   Insurance   Benefits   and

Supplemental Security Income to persons with disabilities.   42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income).   The term

"disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which can
> be expected to result in death or which has lasted or can be expected
> to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923

(6th Cir. 1990).

The   Commissioner   has   promulgated   regulations   setting   forth   a   five-step   sequential

evaluation process for evaluating a disability claim.   See "Evaluation of disability in general," 20

C.F.R. §§ 404.1520, 416.920.   In summary, the evaluation proceeds as follows:

4

1)      Is the claimant engaged in substantial gainful activity?

2)      Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3)      Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

Challenge to ALJ's Determination of Plaintiff's Substantial Gainful Activity

1.  Arguments of the Parties

Plaintiff argues that when the ALJ reviewed Plaintiff's past work experience, pursuant to Social Security Ruling ("SSR") 82-62 and step four of the sequential evaluation, the ALJ improperly classified the earnings, as they should have been self-employment earning (DN 12 PageID 880).   Plaintiff continues by asserting that ALJ did not apply the three self-employment tests, instead of the standard Substantial Gainful Activity ("SGA") analysis (Id. at PageID 881). Finally, Plaintiff asserts that her gross monthly earnings do not rise to the level required to be classified as SGA (Id. at PageID 880-81).

In contrast, Defendant claims that Plaintiff's work would be classified as SGA for at least two years, and relevant for step four of the sequential evaluation, under both the standard analysis and the "Worth of Work" self-employment analysis (DN 15 PageID 915-16).   In the traditional

analysis, Defendant compares Plaintiff's annual earnings to the earnings required to be qualified as SGA, to which Defendant concluded that Plaintiff met the qualification in 2010 and 2012 (Id. at PageID 914).   Defendant has utilized the Social Security Administration's chart detailing the minimum monthly earnings to be classified as SGA[2] (DN 15 PageID 914).   Twisting Plaintiff's analysis against herself, Defendant's utilized Plaintiff's "rule of averaging" to bridge the gap of 2011 to conclude that Plaintiff's work qualified as SGA averaged over all three years (Id.).   Turning to the "Worth of Work" analysis, Defendant used Plaintiff's estimated weekly work schedule multiplied various hourly wages to exemplify Plaintiff's earnings exceeding the minimum requirements required for SGA (Id. at PageID 915).

2.   Discussion

The regulations define SGA as work that:

(a)   Involves doing significant and productive physical or mental duties; and

(b)   Is done (or intended) for pay or profit.

20 C.F.R. § 416.910.   A further explanation of what is meant by SGA reads as follows:

Substantial gainful activity is work activity that is both substantial and gainful:

(a)   Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b)   Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

---

2   https://www.ssa.gov/oact/cola/sga.html [*hereinafter* "SGA Chart"].

> (c)    Some other activities. Generally, we do not consider
> activities like taking care of yourself, household tasks,
> hobbies, therapy, school attendance, club activities, or social
> programs to be substantial gainful activity.

20 C.F.R. § 416.972.

Turning to Plaintiff's argument that the ALJ's finding at step four rests upon error, as Plaintiff claims her work as a bookkeeper did not qualify as SGA. The vocational expert classified Plaintiff's past relevant work as a bookkeeper (DOT No. 210.382-014) (Tr. 26). Plaintiff's counsel also contended that Plaintiff "was the primary bookkeeper, and kind of ran the books, and kept everything going" (Tr. 38). When questioned about her duties, Plaintiff responded that she did "[e]verything; keeping up all the stuff for taxes, and payroll, and everything" (Tr. 45-46).

Plaintiff's work would align with the regulations' requirements because the position required significant and productive mental duties ("I used to sit at my desk and do everything, and concentrate, and do it all at one time" (Tr. 47)), and, based on the self-employment earnings (Tr. 45, 169-170), Plaintiff conducted this work for pay or for the intention of profit. As for the recency, duration, and earnings analysis (Tr. 26) (citing SSR 82-62), the ALJ considered numerous pages of evidence, as well as testimony, in finding that Plaintiff's work was SGA (Id.) (citing Tr. 44-63, 167-72, 224-32).

"Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). Based on the DOT's specific vocational preparation level for a bookkeeper (DOT No. 210.382-014), it takes "[o]ver 1 year[, and] up to and including 2 years" for the "amount of lapsed time by a typical worker to learn the techniques, acquire the information, and develop

the facility needed for average performance in a specific job-worker situation."[3]   This means that Plaintiff must have "up to and including 2 years" of SGA eligible work for it to be considered past relevant work.

When reviewing the SGA Chart for the minimum requirement to meet SGA, there are two years in which Plaintiff exceeded the minimum (Tr. 167).   In 2010, Plaintiff earned $12,970.00 (Id.; DN 12 PageID 880).   In 2010, the monthly earnings required for SGA, for a non-blind person, was $1,000 (SGA Chart, *supra* pp. 6 n.2).   When converting Plaintiff's annual earnings into a monthly earning, Plaintiff would surpass the $1,000 minimum with a monthly earning of $1,080.83.   In 2012, Plaintiff earned $14,632.00 (Tr. 167; DN 12 PageID 880).   The monthly minimum, for a non-blind person, in 2012, was $1,010 (SGA Chart, *supra* pp. 6 n.2). When converting Plaintiff's annual earnings into a monthly earning, Plaintiff would surpass the $1,010 minimum with a monthly earning of $1,219.33.   These establishes the two years required to constitute past relevant work.   As such, the ALJ would not be required to consider the self-employment tests.

Therefore, the ALJ's determination regarding Plaintiff's past relevant work as a bookkeeper is supported by substantial evidence, and Plaintiff's argument fails.

Challenge to ALJ's Reliance Upon the Vocational Expert's Testimony

1. Arguments of the Parties

Plaintiff claims that the vocational expert improperly classified Plaintiff's past relevant

---

3   *Components of the Definition Trailer*, DOT App'x C,
    https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

    *Bookkeeper (clerical)*, DOT 210.382-014,
    https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT02A.

work in the logging business as only a bookkeeper (DN 12 PageID 882).   Plaintiff's work history form describes her as a secretary and a "gober"—someone who retrieved parts, oil, and other necessary items (Id.).   Plaintiff asserts that she would have to lift up to 50 pounds during her work as a gober, and this lifting is not within the job duties "within the sedentary description of a bookkeeper" (Id.).

Conversely, Defendant argues that Plaintiff has waived this argument because Plaintiff had described her work as "the primary bookkeeper, and kind of ran the books" but did not include any information that signified her work as a gober (DN 15 PageID 916-17) (quoting Tr. 38). Defendant further relies upon Plaintiff's counsel's lack of examination regarding the other duties Plaintiff now asserts is part of her job, specifically when counsel was questioning the vocational expert (Id. at PageID 917).   Finally, Defendant cites to caselaw dictating that "[a]gency regulations provide that 'past relevant work' is based on the type of job, not the duties imposed by individual employers" (Id.) (citing 20 C.F.R. § 416.960(b)(2); Hughes v. Astrue, 705 F.3d 276, 279 (7th Cir. 2013)).

2.   Discussion

"A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it *or as generally performed in the national economy*." 20 C.F.R. § 416.960(b)(2) (emphasis added).

Throughout the entirety of Plaintiff's testimony at the hearing, Plaintiff never discussed any work other than her duties as a bookkeeper (Tr. 44-63).   The only instance in the record where Plaintiff discusses being a "gober" is on Plaintiff work history report, where she described lifting

and carrying "oil[,] all kinds of parts[;] sometimes couple yards or farther" (Tr. 227).   However, Plaintiff's testimony during the hearing, her only comments about gas or parts were related to paying for them (Tr. 46).   Moreover, Plaintiff's counsel stated, "You, and your husband were operating this business.   He more so on the physical side, you on the bookkeeping side, is that correct?" (Id.).   At this point, Plaintiff merely said "Yes" (Id.).   Plaintiff did not mention any physical work during her job, nor did she mention anything about being a "gober."   As for Plaintiff's physical inabilities to complete the workday, Plaintiff mentioned her purported inability to concentrate and sit in her chair (Tr. 47-48).   Even then, the ALJ and the vocational expert mentioned and considered the potential of Plaintiff lifting up to fifty pounds (Tr. 63-64). However, the only instance of fifty pounds appearing was a checkmark in an underscored line dictating the *heaviest* weight Plaintiff lifted—not the heaviest she frequently lifted—and Plaintiff marked ten pounds as what she *frequently* lifted (Tr. 227) (emphasis added).

The ALJ, based on the evidence in the record and the vocational expert's expertise and knowledge, he "testified that the demands of the claimant's past relevant work as a bookkeeper, as actually or as generally performed, do not exceed the residual functional capacity" (Tr. 26). Finally, the ALJ concluded that, based on SSR 00-4p, "the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles" (Id.). Therefore, the ALJ concluded that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, and accepting the vocational expert's testimony, the [ALJ] finds that the claimant is able to perform it as actually and generally performed" (Id.).

As such, the ALJ's reliance upon the vocational expert's testimony is based on substantial evidence in the record, and Plaintiff's argument fails.

10

Challenge to ALJ's Awarding of Weight to Medical Opinions

1.  Arguments of the Parties

Plaintiff claims the ALJ erred by giving "little weight" to the opinions of Steve English, APRN, who has been Plaintiff's primary care provider for several years and for also awarding "great weight" to the non-examining state agency physician (DN 12 PageID 886-87).   Plaintiff asserts that the ALJ's stated reason for disregarding Nurse English's opinion is contrary to the evidence that "Nurse English indicate[d] with specificity and reasoning why [Plaintiff] is so physically limited" and "Nurse English relied upon objective findings and imaging to come to his determinations along with treatment of [Plaintiff]" (Id. at PageID 887).   Further, Plaintiff argues that the state agency physician only saw Plaintiff a singular time and their analysis was unreasonable (Id.).

Defendant, in turn, contends that Plaintiff's argument "is nothing more than a disagreement with how the ALJ decided to weigh differing opinion" (DN 15 PageID 900).   Defendant begins by noting that Nurse English is not a doctor and stating that Nurse English is not an acceptable medical source (Id. at PageID 901).   Next, Defendant explained that Plaintiff visited pain management specialist Benjamin Smith, D.O., and Dr. Smith did not offer any opinion regarding Plaintiff's functional limitations (Id.).   Third, Defendant claims "the ALJ explained that Nurse English's restrictions were not consistent with the medical record as a whole" (Id. at PageID 902). Defendant explained that both Nurse English's and Dr. Smith's examinations resulted in few abnormalities (Id. at PageID 902-04).   Finally, Defendant contends that the ALJ found Nurse English's opinion to be inconsistent with Plaintiff's daily living activities, where she would be caring for her own personal needs and caring for her ex-husband's as well (Id. at PageID 905).

2.   Discussion

As Plaintiff filed her applications prior to March 27, 2017, the rules in 20 C.F.R. § 416.927 apply to the ALJ's assignment of weight to the medical opinions in the record.   The regulations require ALJs to evaluate every medical opinion in the record.   20 C.F.R. § 416.927(c).   The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source.   20 C.F.R. § 416.927(c). If controlling weight is not assigned to the treating source's opinion, the ALJ must consider the factors in paragraphs (c)(1)-(6) of this section in deciding how much weight to accord each of the medical opinions in the record, including the medical opinion from the treating source.   20 C.F.R. § 416.927(c).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), *id.* § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source"), *id.* § 404.1502, 404.1527(c)(2).   In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."   Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).
>
> The source of the opinion therefore dictates the process by which the Commissioner accords it weight.   Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).   If the Commissioner does not give a

treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013).

The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole, 661 F.3d at 937.

As Plaintiff filed her applications prior to March 27, 2017, treating nurse practitioners are considered "medical sources" but they are not classified as "acceptable medical sources" who are qualified to render a "medical opinion" about the nature and severity of a claimant's impairment, including limitations or restrictions imposed by the impairment.   20 C.F.R. §§ 416.902(a)(7), 416.927(a)(1) and (f).   However, the regulations direct that opinions from "medical sources" such as nurse practitioners, who are not "acceptable medical sources," will be considered "using the same factors as listed paragraphs (c)(1) through (c)(6) in this section."   Id.   Steven English, APRN, is a nurse practitioner.   This means the ALJ must weigh Mr. English's opinion based on factors such as "the examining relationship (or lack thereof), specialization, consistency, and supportability ..."   Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).

Further, other factors that tend to support or contradict Mr. English's opinion may be considered in assessing his opinion.   Gayheart, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)).   Notably, SSR 06–03p and 20 C.F.R. § 416.927(f)(1) indicates not every factor in 20 C.F.R. § 416.927(c) will apply in every case.   Additionally, assessing opinions from "other sources" will depend on the particular facts of the case and each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and the weighing of all the evidence in that particular case.   SSR 06–03p; 20 C.F.R. § 416.927(f)(1).

The ALJ, in this case, gave little weight to the opinion of Nurse Steven English (Tr. 25). The ALJ noted that "as a nurse practitioner, Nurse English is not an "acceptable medical source" whose treating source medical opinion warrants consideration for controlling weight (20 C.F.R. § 416.927(f).   Additionally, the [ALJ] notes that Nurse English is not the claimant's treating source for chronic pain, as the claimant is routinely followed by pain management specialist

Benjamin Smith, D.O." (Id.).   The ALJ gave little weight to Nurse English because Nurse English "opined the claimant is unable to sit, stand, and walk in combination for a full 8-hour workday secondary to musculoskeletal pain" (Tr. 25; *see* Tr. 814-16).   Nurse English attempted to explain away his own treatment notes where he marked "none" in relation to various musculoskeletal findings (Id.).

Consistent with the foregoing explanation, the ALJ's determination to award little weight to Nurse Steven English is supported by substantial evidence, and the Plaintiff's argument fails.

Challenge to ALJ's Determination of Mental Impairments

1. Arguments of the Parties

Plaintiff argues that the ALJ committed clear error in awarding "great weight" to Dr. Gray, while simultaneously "failing to incorporate the clear intellectual limitations his examination revealed" (DN 12 PageID 888-89).   Plaintiff claims Dr. Gray's opinion is questionable because "Dr. Gray estimated [Plaintiff's] general intellectual ability to be in the *low average* range", but "Dr. Gray still found [Plaintiff] capable of complex work" (Id. at PageID 889).

Defendant asserts that Dr. Gray "specifically declined to find that Plaintiff had any mental health impairment, including an intellectual impairment, or any related limitations" (DN 15 PageID 910) (quoting Tr. 325).   Defendant also contends that "[a]ny notation about Plaintiff's low normal intellectual capabilities are outside the scope of a medical opinion" (Id. at PageID 911) (citation omitted).   Stated as a forewarning, Defendant claims "Plaintiff is improperly asking the ALJ to play doctor by recommending specific mental limitations that no medical professional ever has" (Id.) (citations omitted).   Defendant does not dispute Dr. Gray's opinion of Plaintiff's intelligence being on the lower end of the normal range, Defendant recounts Dr. Gray's notations

15

that Plaintiff had "the gross psychological abilities to handle work like stresses, be very reliable and very independent," and she had "the ability to relate to co-workers and interact with supervisors" (Id. at PageID 910) (quoting Tr. 325). Defendant concludes this section of its argument by relying on discretion being given to findings supported by substantial evidence in the record (Id. at PageID 912).

2.   Discussion

In the ALJ's determination, Dr. Gray was given great weight, specifically because he "opined the claimant has no work-related mental limitations" (Tr. 25-26). In Dr. Gray's report, regarding Plaintiff's mental status, Dr. Gray detailed:

> In general, the claimant's affect was normal and remained stable. Claimant denied any clear cut suicide ideation. Affect was appropriate for subject and setting. The thought pattern was without major delusions or flight. She was oriented to person, place, and time. … Moreover, no clear signs of anxiety were noted. Attention span and concentration was low normal based on the mental status data. No confusion was noted. Thus, *it does not appear that the claimant has experienced any significant intellectual decline from premorbid levels*. There were no clear signs in these data that depression or anxiety affected these findings. Indeed, her psychomotor abilities were grossly intact although perhaps *very slightly impaired*. If anything, this was probably *secondary to ongoing pain*. Attention span and concentration was low normal based on the mental status data. ... She was able to do some simple calculations and was able to do the aforementioned contrived coding task in an adequate although perhaps very slightly impaired range. … Measures of mental flexibility … showed this function to be in the low normal range. In general, psychomotor speed of operation … was low normal.

(Tr. 323-24) (emphasis added). Ultimately, he opined that Plaintiff "appear[s] to have been approximately low average premorbid general intellectual abilities" (Tr. 325). Further, Dr. Gray

stated that "claimant continues to have the ability to do complex, detailed and simple repetitive types of tasks.… She has the gross psychological abilities to handle work like stresses, be very reliable and very independent. She has the ability to relate to co-workers and interact with supervisors. She has the gross neurocognitive and intellectual abilities to handle her own business affairs and manage her own funds" (Id.). However, throughout the rest of the report, Dr. Gray does not ever dictate any mental impairments plaguing Plaintiff (Tr. 322-25).

While Plaintiff claims the ALJ "fail[ed] to incorporate the clear intellectual limitations" (DN 12 PageID 888-89), the ALJ discussed the findings of Dr. Gray, cited to the documentation produced from his psychological examination, and even noted that "Dr. Gray declined to offer the claimant any mental diagnosis" (Tr. 23, 25, 322-25). As such, the ALJ's use of and the weight awarded to Dr. Gray's opinion is supported by substantial evidence, and Plaintiff's argument fails.

### Challenge to ALJ's RFC Determination

1. Arguments of the Parties

Plaintiff further claim asserts that the ALJ's RFC determination is not supported by substantial evidence in the record because the ALJ purportedly mischaracterized the evidence and the record at multiple points in the ALJ's analysis (DN 12 PageID 890-91). Plaintiff focuses on alleged mischaracterizations regarding Plaintiff's daily living activities, her medical impairments affecting her ability to perform at a medium RFC, and the ALJ's incorrect assertion that Plaintiff's ex-husband still lives with her (Id.).

While initially noted as a mischaracterization of severe impairments, Plaintiff also argues the ALJ erroneously "encompassed all of [Plaintiff's] chronic pain generically under osteoarthritis", and "[t]his is not accurate and minimizes the severity of her multiple physical

17

impairments and their objective findings" (DN 12 PageID 883).   Further, Plaintiff criticizes the ALJ's severity determination because "[t]he ALJ also minimized [Plaintiff's] treating by stating it has only been 'conservative' for her mild-moderate arthritis and that her clinical examinations have been generally unremarkable" (<u>Id.</u>).   Plaintiff claims this mischaracterizes the evidence, and then recounts examination notes from nineteen different visits (<u>Id.</u> at PageID 883-86).   Therefore, Plaintiff claims her treatment notes and complaints "contradict[] the ALJ's characterization and severe impairments" (<u>Id.</u> at PageID 886).   This argument of failing consider Plaintiff's severe impairments is purported to "directly impact[] the RFC, especially in Plaintiff's hands" (<u>Id.</u>).

Defendant recounts the examinations of Drs. Reed and Risner and asserts, based on Plaintiff's nonuse of her prescribed cane, that "a doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence" (DN 15 PageID 906-07) (quoting <u>Mitchell v. Comm'r of Soc. Sec.</u>, 330 Fed. App'x 563, 569 (6th Cir. 2009)).   Defendant goes on to cite to SSR 96-9p in claiming "that in order [t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)" (DN 15 PageID 907).   Defendant, in parentheticals, quoted SSR 96-6p[4] when discussing that Drs. Reed and Risner were both state agency reviewers and are considered "highly qualified physicians […] who are also experts in Social Security disability evaluation" (<u>Id.</u> at PageID 908).   Next, Defendant concedes that "neither Dr. Reed nor Dr. Risner had access to

---

4   Social Security Ruling 96-6p has since been rescinded and replaced by SSR 17-2p.   However, SSR 96-6p is still effective for applications filed prior to March 27, 2017.   https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html.

the entire record at the time [they] authored [their] opinion[s]", but also contends that "the ALJ took this into account, considered the more recent evidence, and adopted an RFC finding more restrictive than the ones proposed by either doctor because of this newer evidence" (Id. at PageID 909) (citing Tr. 18, 25; McGrew v. Comm'r of Soc. Sec., 343 Fed. App'x 26, 32 (6th Cir. 2009)).

Defendant broadly claims that "[t]o the extent that Plaintiff points to some abnormal findings in the record that could support her contention that more restrictive limitations are needed, so long as substantial evidence supports the ALJ's findings, this Court should defer to those findings even if there is substantial evidence in the record that would have supported an opposite conclusion" (DN 15 PageID 912) (citing Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713-14 (6th Cir. 2012); Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004)). Following that claim, Defendant asserts "Plaintiff's argument does not suffice as a basis for disturbing the Commissioner's decision, because it is Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence, not that there is evidence from which the ALJ could have reached the opposite conclusion" (DN 15 PageID 912) (citing Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003)).

2. Discussion

At the forefront of discussion, the undersigned notes that the totality of Plaintiff's arguments under Subsections III(C) and III(F)—pertaining to the medium work RFC—assert that remand is necessary due to the ALJ purportedly mischaracterizing evidence in the record, specifically Plaintiff's daily living activities, Plaintiff's pain and daily function questionnaire, and Plaintiff's living arrangements with her ex-husband (DN 12 PageID 883-86, 890-91).   While Defendant discusses at length the ALJ's awarding of weight to medical opinions, Plaintiff's sole

argument regarding the assignment of weight, specifically regarding Nurse English, was previously discussed above.  Therefore, the undersigned will only evaluate the ALJ's use and characterization of the evidence in the record, based upon the documents argued above, as other contentions challenging the RFC are waived.  *See* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived.").

The RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946(c).  The ALJ makes this finding based on a consideration of medical source statements and all other evidence in the case record.  20 C.F.R. §§ 416.929, 416.945(a), 416.946(c).  Thus, in making the residual functional capacity finding the ALJ must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 416.927(c), 416.929(a).  While opinions from treating and examining sources are considered on the issue of RFC, the ALJ is responsible for making that determination.  20 C.F.R. § 416.927(d).

There is a difference between a medical opinion and an RFC assessment prepared by the ALJ.  The medical opinion is submitted by a medical source and expresses impairment-related functional limitations.  20 C.F.R. §§ 416.913(a)(2), 416.927(a)(1).  By contrast, the RFC assessment is the ALJ's ultimate finding of what the claimant can still do despite his or her physical and mental limitations.  20 C.F.R. §§ 416.945(a), 416.946.

The regulations provide that ALJs "will consider" the medical findings of State agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 416.913a(b)(1).  When the opinion of a non-examining State Agency medical/psychological advisor is consistent with the record, the opinion

20

represents substantial evidence to support the ALJ's decision.   *See* <u>Atterbery v. Sec'y of Health & Human Servs.</u>, 871 F.2d 567, 570 (6th Cir. 1989); <u>Hale v. Sec'y of Health & Human Servs.</u>, 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).   When a non-examining source renders an opinion without having the opportunity to review the complete case record, the ALJ must consider the subsequently submitted evidence in assessing how much weight to give that source's opinion. *See* <u>Kepke v. Comm'r of Soc. Sec.</u>, 636 F. App'x 625, 632-33 (6th Cir. 2016); <u>Blakely v. Comm'r of Soc. Sec.</u>, 581 F.3d 399, 409 (6th Cir. 2009).

Throughout the ALJ's RFC determination, the ALJ utilized Plaintiff's questionnaires regarding fatigue, pain, daily living, and function (Tr. 18-25; *see also* Tr. 184-92, 204-19). The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms.   However, the [ALJ] further finds that [Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 19).   This determination is consistent with 20 C.F.R. § 416.929 and SSR 16-3p.   Plaintiff claims that her inability to grocery shop, mow her lawn, or take care of her pet preclude her ability to perform at an RFC of medium work (DN 12 PageID 890).

The regulations provide that "[i]n determining whether [a Plaintiff] is disabled, we consider all [of their] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."   20 C.F.R. § 929(a).   "However, statements about [their] pain or other symptoms will not alone establish that [they] are disabled.   There must be objective medical evidence …."   <u>Id.</u>

The documents Plaintiff claims are mischaracterized are comprised solely of Plaintiff's subjective complaints (Tr. 184-92, 204-19).   Plaintiff's previous argument about the assignment of little weight only pertained to Steven English, APRN, and the ALJ's determination was supported by substantial evidence (*supra* pp. 15).   But the ALJ also awarded great weight to Dr. Risner (Tr. 25-26).   The ALJ recounted the visits to Plaintiff's medical providers, the complaints and comments opined during the visits, and any limitations that may be imposed based upon the visit (Tr. 19-25).   Further, when reviewing the report from Plaintiff's examination by Dr. Risner, Plaintiff stated she "can perform all of her activities of daily living without assistance" (Tr. 21, 342).   The ALJ then went on to dictate that Plaintiff's "daily living activities include … caring for her own personal needs …" and "[s]he routinely performs household chores and some treatment notes suggest she even babysits for her grandchildren at times" (Tr. 24).

As for Plaintiff's living arrangements with her ex-husband, Plaintiff claims "[t]he ALJ stated that [Plaintiff] 'cares for her 77 year old husband who can't care for himself'" (DN 12 PageID 891) (quoting Tr. 24).   Plaintiff claims this is a mischaracterization because "[t]he evidence does not indicate she physically cares for him, at all, but rather he lives with her so that he is not alone" (Id.).   In the ALJ's explanation, the ALJ explicitly recounts that Plaintiff "stated that she and her 77-year-old husband were separated but explained that he lived with her because he was no longer 'able to stay by himself'" (Tr. 23) (citing Tr. 58).   Additionally, while the ALJ does state that Plaintiff "car[es] for her 77-year-old husband who can't care for himself," the ALJ also qualifies that statement by immediately including the statement "sufficiently to live alone" (Tr. 24).   During the hearing, the ALJ questioned Plaintiff about her living arrangements with her ex-husband and directly asked, "Are you taking care of him now, letting him stay with you?"

22

(Tr. 58), to which Plaintiff responded, "Yes, I'm letting him stay there because he's not able to stay by himself" (Id.).   This directly undercuts Plaintiff's claim of mischaracterizing the record.

As such, the ALJ's determination is supported by substantial evidence, and Plaintiff's arguments fail.

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion."   Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004).   Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.   42 U.S.C. § 405(g).   Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.   (Id.).   After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.   Therefore, Plaintiff is not entitled to relief with regard to her challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

<em>H. Brent Brennenstuhl</em>

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

November 6, 2020

Copies:        Counsel of Record